United States District Court
Southern District of Texas
**ENTERED**
July 26, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Urvashi Navin Desai and VikashKumar Desai, | § § § § | |
| *Plaintiffs,* | § § | Case No. 4:22-cv-03497 |
| v. | § § § | |
| Alejandro Mayorkas, U.S. Department of Homeland Security, et al. | § § § § | |
| *Defendants.* | | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

The bureaucratic mess that Plaintiffs have endured is nothing short of a nightmare.  For more than twenty years, Plaintiff Urvashi Navin Desai, together with her husband, Plaintiff VikashKumar Desai, took all administrative steps necessary to obtain her legal permanent residence and, ultimately, apply for naturalization.  Yet, unbeknownst to Plaintiffs, the U.S. State Department purportedly terminated Ms. Desai's visa application years before U.S. Citizenship and Immigration Services ("USCIS") issued her green card.  According to Defendants (collectively, the "Government"), that means her green card is invalid despite USCIS's prior decision to issue it.

But the Government found itself in a quandary.  Having failed to timely communicate the information about Ms. Desai's visa between its agencies—

much less to Ms. Desai—the Government is now time-barred from rescinding her green card. And Ms. Desai understandably was hesitant to rescind it voluntarily unless the Government agreed to act promptly on her new round of applications for status—which the Government has refused to do. Instead, the Government chose to initiate removal proceedings. That course of action threatens to tear Ms. Desai away from her family, her business, and the life that she has built during her decades-long residence in the United States.

The Court sympathizes with Ms. Desai's plight and has serious concerns with the Government's strongarm tactics. But, as discussed below, the Immigration and Nationality Act constrains the Court's ability to afford the relief that Ms. Desai seeks. As a result, it is recommended that the Court grant the Government's Motion to Dismiss, Dkt. 13, and that Plaintiffs' claims be dismissed without prejudice.

Also pending before the Court are two procedural motions. Plaintiffs seek leave to file a sur-reply in opposition to the Government's motion to dismiss, Dkt. 23, and the Government seeks to strike Plaintiffs' Exhibit 1 (Dkt. 16-1) to their response to the motion to dismiss. Dkt. 17, 27. As explained below, these motions are denied.

## Background

### I.   Ms. Desai was issued a green card that the Government deemed invalid years later, when she applied for naturalization.

This is an immigration case arising out of Urvashi Navin Desai's ("Ms. Desai") application for naturalization.  Ms. Desai married VikashKumar Desai ("Mr. Desai"), a United States citizen, nearly twenty-two years ago in September 2000.  Dkt. 1 ¶ 17.  The following year, Mr. Desai filed a Petition for Alien Relative, Form I-130, to sponsor Ms. Desai's family visa in the United States.  *Id.*  The Petition was granted in 2002.  *Id.*

Nine years later, and on March 14, 2011, Ms. Desai filed her Application for Adjustment of Status, Form I-485, to become a Lawful Permanent Resident—*i.e.*, a green card holder.  *Id.*  On June 27, 2013, Defendant United States Citizenship and Immigration Services ("USCIS") approved Ms. Desai's petition after reviewing her background, processing her filing fees, and interviewing her and Mr. Desai.  *Id.* ¶ 18.  To this date, she has been living in the United States on the green card (the I-551 Permanent Resident Card) issued as a result of this approval.  *Id.* ¶ 26; *see also* Dkt. 16-1 at 2-8 (correspondences regarding Ms. Desai's green card).

On July 19, 2016, Ms. Urvashi filed her Form N-400 to apply to become a naturalized United States citizen.  Dkt. 1 ¶ 19.  Her application was denied in 2017 because USCIS determined that her application for a green card (Form

I-485) never should have been approved in 2013.  *Id.* ¶¶ 19-21.  According to USCIS, the Desais' petition for a family visa had been terminated by the United States Department of State prior to her filing of her Form I-485, which should have rendered her application ineligible.  *Id.* ¶ 20.  The Government has stated that USCIS was "unaware" of the Department of State's termination at the time that it approved Ms. Desai's green card.  Dkt. 13 at 7. But the Desais never received an explanation as to why her Form I-485 was approved despite this discrepancy or why she was not notified of the error prior to her July 2016 naturalization application.  Dkt. 1 ¶ 21.

On January 25, 2018, Ms. Desai appealed the USCIS's denial of her naturalization by filing a Form N-336, a Request for Hearing on a Decision in Naturalization.  *Id.* ¶ 19.  The hearing was held on March 29, 2021, but no decision has been issued.  *Id.* ¶ 25, Ex. 6.

## II.     <u>Given the Government's action, Ms. Desai filed a second application for a green card and, subsequently, filed this lawsuit.</u>

Because the Government took the position that Ms. Desai was not holding a valid green card, Mr. Desai restarted the process from the beginning, out of an abundance of caution.  *Id.* ¶ 24.  On June 14 and December 6, 2019 respectively, Mr. Desai filed another Petition for Alien Relative, Form I-130, and Ms. Desai filed another Application for Adjustment of Status, Form I-485. *Id.*  USCIS took no action on these applications, which were pending until this

litigation commenced.  Dkt. 16-3 (USCIS Decision on I-485).

On October 20, 2021, the Desais filed this suit, naming as defendants Attorney General Merrick Garland, Secretary of the U.S. Department of Homeland Security Alejandro Mayorkas, USCIS Director Ur Mendoza Jaddou, and Acting Field Office Director of USCIS Houston District Office Wallace L. Carroll.  Dkt. 1 ¶¶ 5-8.  They brought two claims: one for *de novo* review of Ms. Desai's eligibility for naturalization and another, in the alternative, for mandamus relief that would force Defendants to end their undue delay in adjudicating Ms. Desai's pending Forms N-336, I-130, and I-485.  *Id.* at 9-17.

The next day, USCIS's agency counsel acknowledged the lawsuit and faxed the Desais' counsel a copy of a proposed Agreement to Rescission of Ms. Desai's green card.  Dkt. 16-1 at 18.  The execution of that Agreement, according to USCIS agency counsel, was required before USCIS would adjudicate the Desais' more recently filed Forms I-130 and I-485.  *Id.* at 19. The Government acknowledges that, at the time of the offer and even currently, it could not rescind Ms. Desai's green card without her waiver because the Immigration Nationality Act and Code of Federal Regulations impose a five-year statute of limitations on rescission proceedings.  Dkt. 17 at 2-3 (citing 8 U.S.C. §§ 1255, 1256 and 8 C.F.R. part 246.1).

In early November 2021, counsel for the Desais and USCIS agency counsel negotiated by email.  *See* Dkt. 16-1.  The Desais were hesitant to agree

to the rescission of her green card without any assurances that the second Form I-130 and I-485 applications would be granted—or even reviewed promptly. *Id.* at 7-8. Negotiations stalled over the timing and terms of the rescission. *Id.* at 3-6.

In the last substantive email from agency counsel, USCIS stated, "If the U.S. District Court orders USCIS to adjudicate the [second] I-485, USCIS will deny the I-485 because [Ms. Desai] is already a lawful permanent resident." *Id.* at 4. USCIS also warned that, "[i]f you and the USCIS Houston Field Office cannot settle on language for Urvashi Navin Desai's Agreement to Rescission, USCIS Houston Field Office will adjudicate the I-130 and could issue a Notice to Appear [in removal proceedings]. Any adjustment hearing in immigration court will be many months, if not years, in the future." *Id.* USCIS did not respond to the Desais' counsel follow up emails, other than to inform them, without explanation, that the proposed November 29, 2021 interview date for their I-130 was cancelled. *Id.* at 2-3.

## III. <u>The Government responded by initiating removal proceedings against Ms. Desai and filing a motion to dismiss her suit.</u>

On November 18, 2021, the Desais served the Government with this lawsuit, effectuating an answer date of January 18, 2022. Dkts. 11, 12. Eight days before the Government's answer deadline, Defendant Department of Homeland Security began removal proceedings against Ms. Desai by issuing a

Notice to Appear.  Dkt. 14-1.  The Notice provides the following justification for her removal: "On or about June 27, 2013, USCIS erroneously adjusted you to lawful permanent residence because you lacked an approved Form I-130, Petition for Alien Relative, an immediately available visa, to support the adjustment as required by Section 245(a)(3) of [the INA]."  *Id.* at 4.

On January 18, 2022, Defendants filed a motion to dismiss arguing that, pursuant to 8 U.S.C. § 1429, the Court could not consider Ms. Desai's naturalization application or compel the Government to do so because Ms. Desai was subject to removal proceedings.  Dkt. 13 at 4-8.  For the same reason, the Government argued that the Court could not exercise subject matter jurisdiction over the Desais' second Form I-130 and I-485 applications.  *Id.* at 8-9.  The Government also argued, in the alternative, that Ms. Desai failed to exhaust her administrative remedies and to state a claim pursuant to Rule 12(b)(6).  Outside the filings in this lawsuit, on January 21, 2022, USCIS administratively closed the Desais' Form I-485 application, citing a lack of jurisdiction to adjudicate that application while Ms. Desai is in removal proceedings.  Dkt. 16-3 (USCIS Decision on I-485).

This series of adverse actions taken against Ms. Desai resulted in a flurry of filings in this Court.  The Desais filed a response to the motion to dismiss, Dkt. 16, which was followed by the Government's reply, Dkt. 17, and the Desais' attempted sur-reply.  Dkt. 22.  The Government filed a motion to

7

strike the sur-reply, which was granted because it violated Local Rule 7 and the Court's Procedures & Practices.  Dkts. 23, 24.  The Desais then filed a motion for leave to file the sur-reply that was previously filed as docket entry 22. Dkt. 25.  In turn, the Government filed a motion to re-urge the same motion to strike Plaintiffs' Exhibit 1 that was included in the Government's reply. Dkts. 17, 27.  A hearing was held on July 15, 2022, and these motions are ripe for this Court's recommendation and adjudication.

## Legal Standard

"Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  The plaintiff bears the burden to establish that subject-matter jurisdiction exists.  *Id.*  "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."  *Id.* at 287.

Claims should be dismissed pursuant to Rule 12(b)(6) if a party fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8's requirement of a "short

and plain statement of the claim showing that the pleader is entitled to relief."
Fed. R. Civ. P. 8(a)(2).  A complaint must contain "only enough facts to state a
claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009).  "Conversely, when the allegations in a complaint, however true,
could not raise a claim of entitlement to relief, this basic deficiency should be
exposed at the point of minimum expenditure of time and money by the parties
and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation
marks and alteration omitted).

## Analysis

### I.    The parties' motions to strike evidence and to file a sur-reply are denied.

There are two procedural motions that address the evidence and briefing
in connection with the Government's motion to dismiss.  First, the Government
filed a motion to strike Plaintiffs' Exhibit 1.  Dkt. 17 at 5; Dkt. 27 (renewed
motion).    Second, Plaintiffs requested leave to file a sur-reply to the
Government's motion to dismiss.  Dkt. 25.  Both motions are denied.

Regarding Plaintiff's Exhibit 1, Dkt. 16-1, the Government maintains
that its documentation of communications between Plaintiffs' counsel and

USCIS counsel contains settlement discussions inadmissible under Fed. R. Evid. 408. Dkt. 17 at 5; Dkt. 27 at 1-3. Rule 408, however, only prohibits use of settlement negotiations "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement ...." Fed. R. Evid. 408. Here, Plaintiffs are not relying on Exhibit 1 to prove whether Ms. Desai is entitled to be naturalized. They offer Exhibit 1 for the limited purpose of showing that the Government retaliated against Ms. Desai, after she refused to voluntarily rescind her green card without promises to act on her subsequent applications for status, by initiating removal proceedings after this suit was filed. *See* Dkt. 16 at 1-3; Dkt. 28 at 2. Rule 408 does not preclude that use of Exhibit 1. The Government's motion to strike is therefore denied.

The sur-reply that Plaintiffs request leave to file is unwarranted. Sur-replies are "heavily disfavored," but the Court "may, in the exercise of sound discretion, grant motions for leave to file such additional briefing." *Arya Risk Mgmt. Sys., Pvt. Ltd. v. Dufossat Cap. Puerto Rico, LLC*, 2022 WL 1644530, at *4 (S.D. Tex. May 24, 2022) (internal citations omitted). According to Plaintiffs, their sur-reply would address a new policy, adopted on April 3, 2022 by the Office of Principal Legal Advisor ("OPLA") of the Immigration Customs Enforcement, that counsels against placing individuals like Ms. Desai in removal proceedings. Dkt. 25 at 2.

The new policy, however, post-dates the Government's initiation of Ms. Desai's removal proceedings against Ms. Desai. *See* Dkt. 14-1 (Jan. 10, 2022 Notice to Appear). It is therefore irrelevant to whether the Government improperly initiated removal proceedings months before the policy was issued, or to any other issue raised by the Government's motion to dismiss. Accordingly, the Court's consideration of the sur-reply is not necessary to rule on the motion to dismiss. The Court therefore denies the motion for leave as moot. *See generally Morris v. Texas Health & Hum. Servs. Comm'n*, 2019 WL 3752762, at *6 (S.D. Tex. Aug. 8, 2019) (denying as moot a motion for leave to file sur-reply that raised no new legal theories or evidence and did not affect the outcome of the dispositive motion).

## II.   The pending removal proceeding forecloses Plaintiffs' claims.

The Government has invoked both Rule 12(b)(1) and Rule 12(b)(6) as a basis for dismissal of Plaintiffs' claims. Dkt. 13. As its principal contention, the Government asserts that the initiation of removal proceedings either divests the Court of jurisdiction to resolve Ms. Desai's entitlement to naturalization and to compel decisions on her appeal and new applications (for visa and green card, Forms I-130 and I-485), or, alternatively, bars this relief on the merits. *Id.* at 4-8, 11. Even assuming that Ms. Desai had exhausted her administrative remedies, the Court concludes that the removal

proceedings, while not a jurisdictional impediment, nonetheless warrant dismissing Plaintiffs' claims without prejudice.[1]

### A. Under Section 1429, the removal proceedings preclude judicial review of Ms. Desai's entitlement to naturalization.

#### i. Section 1421(c) governs Ms. Desai's request for review of her original naturalization application.

Ms. Desai invokes two statutes as a basis for conducting a *de novo* review of the ruling that denied her application for naturalization: 8 U.S.C. § 1421(c) and § 1447(b). Dkt. 1 ¶¶ 1, 14, 30. Only one of these statutes—Section 1421(c)—applies.

Section 1447(b) authorizes a federal district court to determine an applicant's eligibility for naturalization, but only if USCIS "fail[s] to make a determination under section 1446 ... before the end of the 120-day period after

---

[1] This recommended disposition renders it unnecessary to resolve the Government's other contention that Ms. Desai has not exhausted her administrative remedies under 8 U.S.C. § 1421(c). *Id.* at 10. According to the Government, failure-to-exhaust forecloses subject-matter jurisdiction. *Id.* If true, then the Court would need to resolve that issue first. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). But this Court agrees with recent, well-reasoned authority—consistent with the Supreme Court's analysis of other statutes—holding that exhaustion under Section 1421(c) is not a jurisdictional requirement. *See Donnelly v. Controlled Application Review & Resolution Program Unit*, 37 F.4th 44, 54 (2d Cir. 2022) ("Section 1421(c) lacks the clear language we require before finding that a procedural limitation 'speak[s] to a court's authority' rather than 'to a party's procedural obligations.' We therefore hold that § 1421(c) prescribes a nonjurisdictional claim-processing rule.") (internal quotation marks omitted) (quoting *EPA v. EME Homer Cnty. Generation, L.P.*, 572 U.S. 489, 512 (2014)); *cf. Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) (Title VII exhaustion requirement is not jurisdictional). Because Plaintiffs' claims should be dismissed on other grounds, there is no need to address this additional merits-related issue.

the date on which the examination is conducted ....” 8 U.S.C. § 1447(b).  In Ms.

Desai’s case, however, USCIS *did* make that determination: it denied her

application for naturalization.  Dkt. 1-3 (Dec. 26, 2017 Notice of Decision).  By

its terms, Section 1447(b) does not apply.  And although Ms. Desai appealed

that determination administratively pursuant to Section 1447(a), *see* Dkt. 1-6

(N-336 Request for Hearing on a Decision in Naturalization Proceedings), that

provision does not contemplate judicial review.

Instead, Ms. Desai’s request for judicial review implicates Section

1421(c).  Section 1421(c) permits judicial review if “[a] person whose

application for naturalization ... is denied, *after* a hearing before an

immigration officer under section 1447(a) of this title ....” 8 U.S.C. § 1421(c).

In 2018, Ms. Desai requested and eventually had a hearing before an

immigration officer, as provided in Section 1447(a).  Dkt. 1 ¶ 25; Dkt. 1-6.

Despite the passage of almost four years since Ms. Desai’s appeal was

filed, no decision has issued.  Dkt. 1 ¶ 25.  In the interim, Ms. Desai and her

husband filed this suit.  Dkt. 1.  And just days before the Government’s

deadline for filing an answer, the Government then initiated removal

proceedings against Ms. Desai, Dkt. 14-1 (Jan. 10, 2022 Notice to Appear),

invoking its determination years earlier that Ms. Desai’s green card was

invalid.  Dkt. 1-3 (Dec. 26, 2017 Notice of Decision).

### ii.   Ms. Desai's claim under Section 1421(c) is barred by Section 1429.

The Government asserts that its initiation of removal proceedings triggers a statutory barrier to judicial review. Under Section 1429:

> no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provision of this chapter or any other Act.

8 U.S.C. § 1429.   By giving express priority to removal proceedings, Section 1429 sought to end the "race between the alien to gain citizenship and the Attorney General to deport him." *Shomberg v. United States*, 348 U.S. 540, 544 (1995); *see also Zayed v. United States*, 368 F.3d 902, 905 (6th Cir. 2004) (recognizing this objective behind Section 1429).

Courts have taken different views of Section 1429's impact on the scope and availability of judicial review under Section 1421(c). The Second, Sixth, and Ninth Circuits concluded that Section 1429 does not strip federal courts of jurisdiction under Section 1421(c) (or Section 1447(b)), but nonetheless limits the available relief. *See Zayed*, 368 F.3d at 906; *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1046-47 (9th Cir. 2004) (agreeing with *Zayed*); *see also Ajlani v. Chertoff*, 545 F.3d 229, 240 (2d Cir. 2008) (addressing Section 1447(b)). The Third and Seventh Circuits have agreed in part; they concluded not only that Section 1429 does not divest courts of jurisdiction to hear Section 1421(c) claims, but it also does not foreclose declaratory relief in certain circumstances.

*See Klene v. Napolitano*, 697 F.3d 666, 669 (7th Cir. 2012) ("This approach preserves the alien's entitlement under § 1421(c) to an independent judicial decision while respecting the limit that § 1429 places on the Attorney General's powers."); *Gonzalez v. Sec'y of Homeland Sec.*, 678 F.3d 254, 259 (3d Cir. 2012) (finding "declaratory relief ... appropriate and sufficient in this context"). And although the Tenth Circuit agreed that Section 1429 does not strip courts of jurisdiction, it concluded that removal proceedings moot a Section 1421(c) claim. *See Awe v. Napolitano*, 494 F. App'x 860, 865-66 (10th Cir. 2012).

The Government, however, maintains that the Fifth Circuit has taken a different stance: that Section 1429 strips federal courts of jurisdiction to review naturalization determinations when removal proceedings have begun. Dkt. 13 at 6-7 (citing *Saba-Bakare v. Chertoff*, 507 F.3d 337 (5th Cir. 2007)). Several district courts (and the Seventh Circuit in *Klene*, 697 F.3d at 667) have interpreted *Saba-Bakare* that way. *See, e.g.*, *Zekic v. Rodriguez*, 2015 WL 12751505, at *3 (W.D. Tex. June 8, 2015) (applying *Saba-Bakere* to conclude "that because removal proceedings are pending against Zekic, the court lacks subject-matter jurisdiction over Zekic's claims for relief"); *Singhania v. Holder*, 2011 WL 5166420, at *3 (N.D. Tex. Oct. 6, 2011) (discussing *Saba-Bakare* and collecting "[s]ubsequent decisions in this district [that] also required dismissal without prejudice for lack of subject matter jurisdiction where a plaintiff seeks § 1421(c) review while a removal proceeding against him is pending").

But *Saba-Bakare* does not go that far.  There, the Fifth Circuit agreed that the district court lacked jurisdiction over a claim under Section 1421(c) only because USCIS issued its denial of plaintiff's naturalization application after removal proceedings had started—which Section 1429 forbids.  *Saba-Bakare*, 507 F.3d at 340.  Because "the initial denial of [plaintiff's] application has no continuing legal effect," the Fifth Circuit concluded that "neither it nor the underlying findings of the USCIS can now be reviewed under 8 U.S.C. § 1421(c)."  *Id.*

Put differently, the administrative denial in *Saba-Bakare* was void, leaving nothing for the district court to review under Section 1421(c).  *See, e.g.*, *Xue v. Tarango*, 2014 WL 549178, at *2 (E.D. Tex. Feb. 7, 2014) (construing *Saba-Bakare*'s conclusion as a finding "that the invalid USCIS order did not confer § 1421 jurisdiction on the district court").  This conclusion does not indicate that Section 1429 directly forecloses the district court's jurisdiction. *See id.*; *Esomo v. Barrows*, 2008 WL 3172779, at *2 (N.D. Tex. July 25, 2008) (*Saba-Bakare* addressed "an unusual factual scenario" and did not resolve the "specific jurisdictional question" regarding Section 1429's impact on Section 1421(c) actions).  Moreover, Section 1429 contains no language divesting a federal court of jurisdiction granted under Section 1421(c)—a point that *Saba-Bakare* did not address.  *See De Lara Bellajaro*, 378 F.3d at 1046 ("[W]e see no textual basis for concluding that jurisdiction vested in district courts by

16

§ 1421(c) is divested by § 1429."); *Zayed*, 368 F.3d at 906-07 (same); *Esomo*, 2008 WL 3172779, at *3 (agreeing with *Bellajaro* and *Zayed*).

At the same time, the analysis of Section 1447(b) in *Saba-Bakare* does signal that Section 1429 constrains a court's ability to grant relief under Section 1421(c)—much as the Second, Sixth, and Ninth Circuits have concluded. As noted above, Section 1447(b) permits district courts to review naturalization applications when an initial decision is delayed. 8 U.S.C. § 1447(b). Once removal proceedings have started, however, Section 1429 prevents the Attorney General from considering those applications. *Saba-Bakare*, 507 F.3d at 340. Given this constraint, the Fifth Circuit concluded that "[e]ven if jurisdiction exists under § 1447(b), ... invoking jurisdiction under this section would be futile" because "§ 1429 requires that Saba-Bakare wait until the termination of the removal proceeding before either a district court or the USCIS entertains a question regarding his naturalization application." *Id.* (holding "the administrative delay here is required by § 1429").

The same rationale indicates that removal proceedings, while not a jurisdictional impediment to review, nonetheless preclude this Court from granting the relief that Ms. Desai seeks under Section 1421(c). Congress gave the Attorney General "sole authority to naturalize persons as citizens ...." 8 U.S.C. § 1421(a). This means a federal court cannot grant a request for naturalization under Section 1421(c); it can only direct the Attorney General

to do so. *See Zayed*, 368 F.3d at 906. But Section 1429 bars the Attorney General from naturalizing an alien after removal proceedings have begun. In that situation, invoking a federal court's jurisdiction under Section 1421(c) "would be futile" because a court cannot grant effective relief and direct the Attorney General to grant naturalization when removal proceedings are pending.[2] *See Saba-Bakare*, 507 F.3d at 340; *Zayed*, 368 F.3d at 906.

Accordingly, this Court agrees with the Government's alternative position, under Rule 12(b)(6), that Ms. Desai cannot obtain review of her naturalization application while the removal proceeding is pending. *See, e.g., Luna v. Barr*, 2020 WL 572877, at *4 (S.D. Tex. Jan. 13, 2020) (recommending dismissal of similar claim under Rule 12(b)(6)), *report and recommendation adopted*, 2020 WL 567187 (S.D. Tex. Feb. 5, 2020); *Esomo*, 2008 WL 3172779, at *3 (adopting and applying this approach from the Sixth and Ninth Circuit's decisions). The proper result is to dismiss Ms. Desai's claim without prejudice

---

[2] Because Plaintiffs have not asserted a declaratory judgment claim, the Court need not determine whether Section 1429 precludes such relief. *See Klene*, 697 F.3d at 669 (authorizing declaratory relief); *Gonzalez*, 678 F.3d at 259-61 (same). Notably, however, allowing a court to declare an applicant entitled to naturalization, despite pending removal proceedings, stands in tension with Section 1429's intent to accord priority to removal proceedings, thereby incentivizing the very race to the courthouse that Section 1429 was designed to prevent. *See Zayed*, 368 F.3d at 905 (recognizing these purposes behind Section 1429). Regardless, even the Seventh Circuit indicated that declaratory relief is unavailable when, as here, "the application for naturalization had been pending when the removal proceedings began ...." *Klene*, 697 F.3d at 669. Under these circumstances, "the Attorney General would not have made a final decision and §1421(c) would not have allowed [an applicant] to ask the district court for relief." *Id.*

18

to refiling if the removal proceedings are terminated in her favor. *See Luna*, 2020 WL 572877, at *4 (same disposition).

### B. The removal proceedings also foreclose mandamus relief to compel the Government to act on her applications.

For much the same reason, Section 1429 bars Ms. Desai's alternative requests to compel the Government to issue a decision in her appeal of the denial of naturalization (Form N-336) or to adjudicate her subsequent applications for status (Forms I-130 and I-485). *See* Dkt. 1 at 9-17; 8 U.S.C. § 1429. Even if those determinations have been unduly delayed, the Attorney General cannot act on them now that removal proceedings are underway. *See* 8 U.S.C. § 1429. Thus, the Court cannot compel the Attorney General to issue those decisions either. *See, e.g.*, *Mewa Martinez v. Bryson*, 2021 WL 260452, at *4 (N.D. Tex. Jan. 26, 2021) ("[T]he Court may not compel the USCIS to violate § 1429 by adjudicating Mewa's application before the removal proceeding has concluded."). Under these circumstances, Plaintiffs have not stated a viable claim for mandamus relief. *See id.* (same conclusion).

### III.   The Court lacks jurisdiction to determine if the Government retaliated against Ms. Desai by initiating removal proceedings.

Ms. Desai has asserted that the Government retaliated against her by initiating removal proceedings. Dkt. 16 at 2-5. Eight months before this suit was filed, Ms. Desai's then-counsel wrote to USCIS with an offer that she voluntarily rescind her legal permanent resident status, provided that the

Government agreed to adjudicate her subsequent applications for status without initiating removal proceedings. Dkt. 16-1 at 24. A few weeks later, counsel for USCIS responded with a draft agreement to rescind. *Id.* at 19.

Discussions continued after Ms. Desai retained a different attorney and filed this suit. *See id.* at 18. Ms. Desai's new counsel noted that his client was "very apprehensive of agreeing to rescind her green card without knowing when and how the pending green card applications will be processed." *Id.* at 8. He proposed including language that the agreement to rescind would not take effect until after Ms. Desai's new applications were adjudicated, as well as a specific deadline for resolving those applications. *Id.* at 4-9.

The Government rejected these proposals, closing with a threat to initiate removal proceedings unless Ms. Desai and USCIS settled on language for the agreement to rescind. *Id.* at 4. Although Ms. Desai's counsel pressed for further responses to his proposed revisions, none was received—other than a notification that Ms. Desai's interview for November 29, 2021 (on her new applications) had been cancelled. *Id.* at 2.

One week before its deadline for filing a responsive pleading in this suit, the Government started removal proceedings by issuing a Notice to Appear to Ms. Desai. *See* Dkt. 12 (noting Jan. 18, 2022 deadline for answer); Dkt. 14-1 (Jan. 10, 2022 Notice to Appear). Yet the basis for the Notice of Appear hinges on the Government's determination—years earlier, when denying her

application for naturalization in 2017—that Ms. Desai's green card was invalid.  *See* Dkt. 14-1 at 4 of pdf (asserting that USCIS had "erroneously adjusted" Ms. Desai to lawful permanent residence on June 27, 2013); Dkt. 1-3 at 3 (Dec. 26, 2017 Notice of Decision, asserting that "USCIS determined that you were not lawfully admitted for permanent residence").  This chronology, coupled with the parties' communications, reasonably suggests that the USCIS retaliated against Ms. Desai for filing this suit.

Nonetheless, Congress has divested courts have jurisdiction to consider Plaintiffs' retaliation complaint, by specifying that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [relevant portions of the INA]."  8 U.S.C. § 1252(g); *see Ajlani*, 545 F.3d at 235 (reaching this conclusion).  "While the statute creates an exception for 'constitutional claims or questions of law,' *see id.* § 1252(a)(2)(D), jurisdiction to review such claims is vested exclusively in the courts of appeals and can be exercised only after the alien has exhausted administrative remedies, *see id.* § 1252(a)(2)(D), (a)(5), (b)(4), (d)."  *Ajlani*, 545 F.3d at 235.  As a result, this Court lacks jurisdiction to review Plaintiffs' challenge to Ms. Desai's removal proceedings.

The Court acknowledges that this result regrettably permits the Government to obstruct judicial review of naturalization issues by initiating removal proceedings.  As the Fifth Circuit cautioned, the notion that a naturalization determination is "unreviewable by any court ... may indeed present a persuasive equitable concern."  *Saba-Bakare*, 507 F.3d at 341.  But because this Court is bound by the statutory scheme that Congress enacted, the Fifth Circuit instructs that "this concern should be to Congress, not to this court."  *Id.*  Accordingly, the Court should grant the Government's Rule 12(b)(6) motion to dismiss Plaintiffs' claims without prejudice to refiling them if the removal proceedings are dismissed or otherwise resolved in her favor.

## Recommendation

It is therefore **RECOMMENDED** that Defendants' Motion to Dismiss (Dkt. 13) be **GRANTED** and that Plaintiffs' claims be **DISMISSED WITHOUT PREJUDICE**.

It is **ORDERED** that Defendants' Motion to Strike Plaintiffs' Exhibit 1 (Dkt. 17, 27) be **DENIED**.  It is further **ORDERED** that Plaintiffs' Motion for Leave to File a Supplemental Response or Sur-Reply (Dkt. 25) is **DENIED AS MOOT**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude**

appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on July 26, 2022, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge